UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| WILFRED GUY | CIVIL ACTION |
| VERSUS | |
| JAMES LEBLANC ET AL. | NO.: 18-223-BAJ-RLB |

## RULING AND ORDER

Before the Court is the **Motion for Summary Judgment (Doc. 19)** filed by Defendants James LeBlanc and the State of Louisiana, through the Department of Public Safety & Corrections (collectively, the "Department"). For the reasons that follow, the **Motion (Doc. 19)** is **GRANTED IN PART** and **DENIED IN PART**.

I.  BACKGROUND

This is a disability-discrimination case. (Doc. 1). Wilfred Guy is a hearing-impaired inmate incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. (*Id.*). He sues the Department for violating Title II of the Americans with Disabilities Act and § 504 of the Rehabilitation Act. (*Id.*). He alleges the Department violated these laws by denying him access to Angola's only teletypewriter phone, denying him incentive pay, and prohibiting him from participating in sports, hobbycraft, and rodeo (*Id.*).

1

Guy arrived at Angola in 1987, following his conviction for second-degree murder. (Doc. 19-3 at p. 8). He was diagnosed with a hearing impairment in 1996, and he received a hearing aid around the same time. (*Id.* at pp. 10–11). He is not deaf. (Doc. 19-6 at pp. 1–3). But he suffers from "neural hearing loss" of "an unknown degree" in "a certain portion of the frequency range." (Doc. 19-6 at p. 3). He says that he struggles to hear sounds at a distance. (Doc. 19-3 at p. 12).

He uses a "pocket talker" to communicate. (Docs. 19-1 at ¶ 5; 24-1 at ¶ 5). An audiologist who treated him concluded that he "appear[ed] to have great benefit from" the pocket talker because, when using it, he "responded appropriately to 100% of questions during [the] history taking portion of [the] visit." (Doc. 19-6 at p. 3). The audiologist did not recommend a teletypewriter phone; she found that "[a]n amplified telephone w[ould] be sufficient as long as there is little to no ambient noise present during telephone calls." (*Id.*).

Guy has worked various jobs at Angola. (Doc. 19-3 at p. 30). For a time, he performed field work, which he describes as "hoeing the rows, greens, ... and ditches." (*Id.* at p. 39). He considered the work dangerous because he could not hear the swinging of sling blades, and he feared being struck. (*Id.* at p. 40). He presented these concerns to one of Angola's doctors, who responded by placing Guy on a "duty status restriction." (Doc. 18-10). The restriction, issued in September 2012, reads:

> PERMANENT DUTY STATUS: REGULAR DUTY WITH RESTRICTIONS; OUT OF FIELD, NO KITCHEN, NO SPORTS, NO HOBBYCRAFT, NO RODEO X PERMANENT

(Doc. 18-10). The "out of field" and "no kitchen" restrictions prohibit Guy from working in the field and in the kitchen. (*Id.*). The "no sports" restriction prohibits Guy from playing sports at Angola, the "no hobbycraft" restriction prohibits him from participating in hobbycraft activities, and the "no rodeo" restriction prohibits him from riding horses or bulls in the Angola rodeo. (Docs. 19-2 at ¶¶ 8–10; 24-1 at ¶¶ 8–10). Angola officials updated Guy's duty status in July 2015. (Doc. 19-5 at p. 2). Not much changed: officials merely added an "away from machinery" restriction. (*Id.*).

One of the prison's policies, Directive No. 13-063, forbids restricted-duty offenders (like Guy) from "participa[ting] in sports and/or recreational activities, unless specified by the treating health care provider." (Doc. 19-13 at p. 3). Despite this policy, Guy would like to participate in some of the prison's sports and hobbycraft programs. (Doc. 19-3 at pp. 46–47). So, in March 2017, he submitted an administrative remedy procedure form requesting "[a]ccess to sports, hobbycraft, and rodeo, three programs that my hearing disability does not prevent me from being able to participate in." (Doc. 21-13 at p. 4). Prison officials denied the request about four months later. (*Id.* at p. 5). But the prison's physician, Dr. Randy Lavespere, acknowledges that Guy can safely perform hobbycraft activities like "leather work" and painting. (Doc. 21-3 at p. 69).

Angola inmates may receive "incentive pay" for work at hourly rates ranging from $.02 to $1. (Docs. 21-2 at ¶ 1; 27-1 at ¶ 1). Guy is capable of performing paid work at Angola. (Docs. 21-2 at ¶ 13; 27-1 at ¶ 13). But he did not receive nine months of incentive pay from 2016–2017. (Docs. 21-2 at ¶ 14; 27-1 at ¶ 14). The reason for

that is not clear. (Doc. 21-3 at p. 136). Guy has received incentive pay since March 2017, when he began working as a janitor in Angola's mattress factory. (Docs. 19-2 at ¶ 39; 24-1 at ¶ 39). He now works as a "walk orderly," a paid position he considers "appropriate to his disability." (Doc. 1 at ¶ 51).

On March 6, 2018, Guy sued the Department for violating his rights under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA"), and § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) ("RA"), by denying him access to a teletypewriter phone and prohibiting him from participating in sports and hobbycraft. (*Id.* at ¶¶ 77–78). He alleges that the discrimination was intentional, and he seeks declaratory relief, a permanent injunction requiring the Department to comply with the ADA and RA, nominal and compensatory damages, as well as costs and attorney's fees. (*Id.* at ¶¶ 81, 82, 86).

Now, the Department moves for summary judgment. (Doc. 19).

## II. LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit." *Id.* at 248. In ruling on a motion for summary judgment, the Court "view[s] the facts and draw[s] reasonable inferences in the light most favorable

to the nonmoving party." *Duncan v. Wal-Mart La., L.L.C.*, 863 F.3d 406, 409 (5th Cir. 2017).

## III. DISCUSSION

The Department's motion implicates two federal laws: Title II of the ADA and § 504 of the RA. (Docs. 19, 21). "The ADA is a 'broad mandate' of 'comprehensive character' and 'sweeping purpose' intended 'to eliminate discrimination against disabled individuals, and to integrate them into the economic and social mainstream of American life.'" *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011) (en banc) (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001)). Title II, in particular, "focuses on disability discrimination in the provision of public services." *Frame*, 657 F.3d at 224. Section 504 of the RA complements Title II by "prohibit[ing] disability discrimination by recipients of federal funding." *Id.*

These laws "are judged under the same legal standards, and the same remedies are available under both." *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) (citing *Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002)). Accordingly, the Court analyzes Guy's ADA and RA claims under one rubric.

The Department first contends that a one-year limitations period applies and that all claims that accrued before July 12, 2016 are time-barred. (Doc. 19 at pp. 1–2). It next contends that Guy cannot come forward with evidence sufficient to support his ADA and RHA claims; that Guy cannot recover compensatory damages because he cannot show a concomitant physical injury; and that Guy cannot establish a right to injunctive relief. (*Id.*). Guy rejoins that his claims are governed by the four-year

5

catch-all limitations period and that material factual disputes preclude summary judgment. (Doc. 24). The Court considers timeliness first.

## A. Timeliness

The parties dispute the limitations period that applies. (Docs. 19, 21). The Department urges the Court to apply the one-year limitation period governing delictual actions under Louisiana law. *See* LA. CIV. CODE art. 3492. Guy, on the other hand, asks the Court to apply a four-year catch-all limitations period under federal law. *See* 28 U.S.C. § 1658(a). Before the Court can determine whether Guy's claims are timely, it must resolve two issues: the limitations period that applies and the date the claims accrued. The Court turns first to the applicable limitations period.

As a general rule, when Congress has not established a limitations period for a federal claim, courts "borrow the most analogous period from state law." *Frame*, 657 F.3d at 223. This Circuit recognizes a "closely circumscribed" and "narrow" exception: a court may decline to adopt a state limitations period "only when another federal statute 'clearly provides a closer analogy,' and 'when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking.'" *Id.* at 237 (quoting *N. Star Steel Co. v. Thomas*, 515 U.S. 29, 35 (1995)).

Invoking this exception, Guy asks the Court to apply the four-year catch-all limitations period. *See* 28 U.S.C. § 1658(a). This period applies in "civil action[s] arising under an Act of Congress enacted after the date of the enactment of this section." 28 U.S.C. § 1658(a). Section 1658 was enacted on December 1, 1990. *See*

PUB. L. NO. 101-650, 104 STAT. 5089. A claim arises under an Act of Congress enacted after December 1, 1990 if the claim was "made possible by a post-1990 enactment." *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004). Guy contends that his ADA and RA claims were "made possible" by the ADA Amendments Act of 2008 ("ADAA"), PUB. L. NO. 110-325, 122 STAT. 3553. The Court agrees.

The ADAA "primarily focuses on broadening the definition of disability" under the ADA. *Neely*, 735 F.3d at 245. "In crafting the ADAA, Congress intended 'that the primary object of attention in cases brought under the ADA should be whether entitles covered under the ADA have complied with their obligations and that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis.'" *Id.* at 245 (quoting PUB. L. NO. 110-325, § 2(b)(5), 122 STAT. 3553 (Sept. 25, 2008) (codified at 42 U.S.C. § 1201)).

The ADAA effectively overturned *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999). *See Kemp*, 610 F.3d at 235–36. In *Sutton*, the United States Supreme Court held that a person whose impairment is "corrected by mitigating measures" is not "disabled" within the meaning of the ADA because that person's impairment does not "substantially limit" a major life activity. *Sutton*, 527 U.S. at 483.

Guy would not have qualified as "disabled" under *Sutton* and the pre-ADAA interpretation of "disability" because he uses a hearing aid and pocket talker, "mitigating measures" that correct his hearing disability.[1] (Doc. 24 at pp. 5–6).

---

[1] The Department did not respond to Guy's argument that his claims were "made possible" by the ADAA and are thus governed by 28 U.S.C. § 1658(a)'s four-year limitations period.

Because Guy would not have qualified as disabled under the pre-ADAA interpretation of disability, Guy's ADA and RA claims were "made possible" by the ADAA, an Act of Congress enacted after December 1, 1990. *See Jones*, 541 U.S. at 382. Accordingly, Guy's claims "aris[e] under an Act of Congress enacted after the date of the enactment" of 28 U.S.C. § 1658, and the four-year catch-all limitations period applies. *See* 28 U.S.C. § 1658(a).

That does not end the analysis. Having decided the four-year limitations period applies, the Court must next decide when Guy's ADA and RA claims accrued. The Court's starting point is the language of the statutes. *See Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 486 (5th Cir. 2013).

Both laws use the passive voice and the present tense. Consider Title II. *See* 42 U.S.C. § 12132. It mandates that "no qualified individual with a disability shall, by reason of such disability, *be excluded* from participation in or *be denied* the benefits of the services, programs, or activities of a public entity, or *be subjected to* discrimination *by* any such entity." *Id.* (emphasis added). Next, consider § 504 of the RA. *See* 29 U.S.C. § 794(a). It mandates that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, *be excluded* from the participation in, *be denied* the benefits of, or *be subjected* to discrimination under any program or activity receiving Federal financial assistance." *Id.* (emphasis added).

Congress's use of the present tense suggests that a new claim accrued on each day the Department failed to correct a non-compliant service, program, or activity.

*See Hamer v. City of Trinidad*, 924 F.3d 1093, 1104 (10th Cir. 2019). The record evidence, viewed in Guy's favor, reflects that the Department prohibited him from using the teletypewriter phone, obtaining a paying job "appropriate to [his] disability," and participating in sports and "hobbycraft" through at least July 14, 2017, when the Department denied his request for access to these programs. (Doc. 21-13 at p. 5). Because Guy filed this action on March 16, 2018, well within four years of July 14, 2017, Guy's claims for injunctive and declaratory relief are timely.

### B. Evidence of ADA and RA Violations

The Department next contends it is entitled to summary judgment because Guy cannot show that it violated the ADA and RHA by prohibiting him from (1) using the teletypewriter phone, (2) obtaining a paying job, (3) participating in sports, (4) participating in hobbycraft, and (5) participating in rodeo. (Doc. 19-1 at p. 9).

#### 1. Teletypewriter Phone

The Department contends it did not violate the ADA or RA when it denied Guy access to the teletypewriter phone because Guy did not meet the Department's criteria for using the teletypewriter phone, and Guy can communicate effectively using a regular telephone.[2] (Doc. 19-1 at pp. 10–11). The Court disagrees.[3]

---

[2] The Department also contends that Guy only wants to use the teletypewriter phone because he can do so free of charge. (Doc. 19-1 at pp. 10–11). Guy's motivations are immaterial. If Guy is hearing impaired and requested an accommodation in the form of access to the teletypewriter phone, the Department was obliged to honor the request. *See* Doc. 24-2 at § VII; 22 L.A.C. § 312(H)(1)(b).

[3] The Department directs the Court to Dr. Sherry Mouton's testimony that "[a]n amplified telephone will be sufficient as long as there is little to no ambient noise present during telephone calls." (Doc. 19-1 at p. 9). The Department has not offered any evidence that "there is little to no ambient noise" present during telephone calls from Angola. (Docs. 19, 19-1). And even if it had, Dr. Mouton's testimony about what is "sufficient" for Guy does not override the Department's obligation, under federal and Louisiana law, to "promptly provide" teletypewriter phone access to "all deaf and hearing impaired inmates" to the extent that pay telephones are available to other inmates. *See* Doc. 24-2 at § VII; 22 L.A.C. § 312(H)(1)(b).

The implementing regulations of the ADA forbid the Department from

> impos[ing] or apply[ing] eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered.

28 C.F.R. § 35.130(b)(8). According to the Department's ADA coordinator, Tracy Falgout, the Department prohibits prisoners from using the teletypewriter phone unless the prisoner shows "profound hearing loss that keeps him from utilizing a telephone with an amplified headset." (Doc. 19-4 at p. 44). The source of this standard? Unknown. To be sure, the Department's consent decree with the United States Department of Justice requires it to "promptly provide TTY units to *all deaf and hearing impaired* inmates residing in housing units to the extent that pay telephones are available to other inmates." (Doc. 24-2 at § VII) (emphasis added). And the Louisiana Administrative Code imposes a functionally identical requirement. *See* 22 L.A.C. § 312(H)(1)(b). Because it is undisputed that Guy is "hearing impaired," the Department must accommodate Guy's impairment by granting him access to the teletypewriter phone "to the extent that pay telephones are available to other inmates." *Id.*

Accordingly, viewing the facts and drawing all reasonable inferences in Guy's favor, the Court concludes that a reasonable jury could find that the Department's "profound hearing loss" standard creates an "eligibility criteria" that tends to "screen out" a class of hearing-impaired persons whose impairments do not rise to the level of "profound hearing loss." 28 C.F.R. § 35.130(b)(8). The Court therefore denies the Department's motion as to Guy's denial-of-teletypewriter-phone claim.

## 2. Incentive Pay

The Department next contends it did not violate federal law when it denied Guy incentive pay because "classification decisions"—not discrimination—account for the denial. (Doc. 19-1 at p. 12).

Louisiana law requires that the Department "provide employment opportunities and vocational training for all inmates, regardless of gender, consistent with available resources, physical custody, and *appropriate classification criteria.*" LA. REV. STAT. § 15:832(A) (emphasis added). "Classification of prisoners is a matter left to the discretion of prison officials." *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990).

The record reflects that the Department housed Guy in "working cell blocks" because he received disciplinary violations. (Doc. 19-8 at p. 3). In a "working cell block," offenders are "automatically assigned to the field." (Doc. 19-4 at p. 154). Because of his "no field" duty status, Guy could not perform paying field work. (Doc. 18-10). But his duty status is attributable to his hearing impairment; so it is his impairment—not his history of disciplinary violations—that ultimately made him ineligible for a paying job, despite his undisputed ability to perform some paying work at Angola. (Docs. 21-2 at ¶ 13; 27-1 at ¶ 13).

Accordingly, viewing the facts and drawing all reasonable inferences in Guy's favor, the Court concludes that a reasonable jury could find that the Department violated the ADA and RA by denying Guy incentive pay for a nine-month period from

2016–2017. *See Duncan*, 863 F.3d at 409. The Court therefore denies the Department's motion as to Guy's denial-of-incentive-pay claim.

### 3. Sports

The Department next contends it did not violate the ADA and RA when it denied Guy access to sports because safety—not discrimination—accounts for the denial. (Doc. 19-1 at p. 14). As purported support, it points to its medical director's testimony that "safety concerns" preclude Guy from "playing contact sports" at Angola. (*Id.*).

As a public entity, the Department may "impose legitimate safety requirements necessary for the safe operation of . . . services, programs, or activities." 28 C.F.R. § 35.130(h). But it "must ensure that its safety requirements are based on actual risks, not on mere speculation, stereotypes, or generalizations about individuals with disabilities." *Id.*

The testimony of Angola's medical director, Dr. Randy Lavespere, tends to show that the Department's "safety requirements" are based on generalizations and speculation—not an individualized assessment of Guy's hearing impairment. *See* 28 C.F.R. § 35.130(h). For example, Dr. Lavespere testified, categorically, that he "won't make an adjustment for sports." (Doc. 19-4 at p. 69). Worse, he testified that Guy's hearing impairment places him at an "increased risk" playing the sport of "pickleball"—a non-contact sport he admitted not knowing.[4] (Docs. 19-4 at pp. 71, 90).

---

[4] According to the United States Pickleball Association, pickleball is "[a] paddle sport created for all ages and skill levels" that "combines many elements of tennis, badminton[,] and ping-pong." https://www.usapa.org/what-is-pickleball/ (last accessed on August 26, 2019).

Accordingly, viewing the facts and drawing all reasonable inferences in Guy's favor, the Court concludes that a reasonable jury could find that the Department violated the ADA and RA by denying Guy access to sports on the basis of speculation or generalizations about his hearing impairment. *See* 28 C.F.R. § 35.130(h). The Court therefore denies the Department's motion as to Guy's denial-of-sports claim.

### 4. Hobbycraft

The Department contends it did not violate the ADA and RA when it denied Guy access to hobbycraft because its medical director "would potentially allow" Guy to participate in "certain" hobbycraft activities. (Doc. 19-1 at pp. 15–16). The contention lacks merit. A public entity's assurance that it will not violate the ADA and RA in the future does not immunize it from liability for past violations. *See* 42 U.S.C. § 12132; 29 U.S.C. § 794(a).

Guy testified that he would like to participate in the prison's leather-working program. (Doc. 19-3 at pp. 50). To that end, he requested access to leather-working and other hobbycraft activities. (Doc. 19-7 at pp. 3–4). The Department denied the request without explaining why Guy cannot safely perform these activities. (*Id.* at p. 5). Angola's medical director, Dr. Lavespere, even testified that certain hobbycraft activities, such as leather work and painting, pose "no inherent danger to [Guy]." (Doc. 19-4 at p. 69). So it is unclear what motive—other than disability discrimination—drove the Department's denial of Guy's request to participate in hobbycraft activities.

13

Accordingly, viewing the facts and drawing all reasonable inferences in Guy's favor, the Court concludes that a reasonable jury could find that the Department violated the ADA and RA by prohibiting Guy from performing hobbycraft activities that Angola's medical director admits Guy can safely perform. The Court therefore denies the Department's motion as to Guy's denial-of-hobbycraft claim.

### 5. Rodeo

The Department contends that Guy's denial-of-rodeo claim should be dismissed because Guy admitted, during his deposition, that he has no interest in riding bulls at the prison rodeo. (Doc. 19-1 at p. 16). Guy responds that he "does not currently wish to participate in the rodeo." (Doc. 24 at p. 22). The Court therefore grants the Department's motion as to Guy's denial-of-rodeo claim and dismisses the claim with prejudice.

### C. Compensatory Damages

The Department next contends that Guy cannot recover compensatory damages because he cannot prove that he suffered a "physical injury" as a result of the Department's alleged violations of the ADA and RA. (Doc. 19-1 at pp. 16–18).

The Prison Litigation Reform Act prohibits a prisoner from suing for "mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act[.]" 42 U.S.C. § 1997e(e).

Guy admits he cannot show a "physical injury" and disclaims any intention of seeking damages for "mental or emotional injury." (Doc. 24 at p. 13). He maintains, however, that § 1997e(e) does not preclude him from recovering nominal- and lost-

wages damages. (*Id.*). The Court agrees. Section 1997e(e) does not address claims for damages unrelated to "mental or emotional injury," and Guy's claims for nominal- and lost-wages damages are assuredly unrelated to "mental or emotional injury." *See* 42 U.S.C. § 1997e(e). The Court therefore denies the Department's motion for summary judgment on Guy's claim for compensatory damages.

### D. Injunctive Relief

The Department contends that it is entitled to summary judgment on Guy's claims for injunctive relief because Guy cannot establish the four prerequisites to obtaining an injunction. (Doc. 19-1 at p. 18) (citing *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)). Guy cannot establish these prerequisites, the Department continues, because Guy lacks evidence to support the underlying ADA and RA claims. (Doc. 19-1 at pp. 18–20). This contention lacks merit because, as explained in § III(B) of this Ruling and Order, Guy offers evidence sufficient to create a genuine dispute of material fact as to each of his ADA and RA claims.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the **Motion for Summary Judgment (Doc. 19)** is **GRANTED IN PART** and **DENIED IN PART**, as follows: Guy's denial-of-rodeo claims are **DISMISSED** with prejudice; all other claims remain before the Court.

Baton Rouge, Louisiana, this 29th day of August, 2019.

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**