**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| WILFRED GUY, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| JAMES LEBLANC, in his official | ) |
| capacity; and THE STATE OF | ) |
| LOUISIANA, DEPARTMENT OF | ) |
| PUBLIC SAFETY & CORRECTIONS. | ) |
| | ) |
| Defendants. | ) |

## FIRST AMENDED COMPLAINT

BIZER & DEREUS, LLC
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Marc Florman   (LA # 35128)
jhammack@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

LAW OFFICE OF WILLIAM MOST, L.L.C.
Louisiana Bar No. 36914
201 St. Charles Ave., Ste. 114 #101
New Orleans, LA 70170
Tel: (650) 465-5023
Email: williammost@gmail.com

COMES NOW Plaintiff Wilfred Guy (DOC # 111795), by and through undersigned counsel, to file this Complaint. In support, he states the following:

## I.    INTRODUCTION

1.    This lawsuit is about how Defendants excluded a hard-of-hearing inmate from the prison's paid work program, hobbycraft, and sports, while at the same time denying him access to accommodations for his disability.

2.    Angola inmate Wilfred Guy has nerve damage in both ears that affect his ability to hear, but he is not completely deaf.

3.    Wilfred is fully capable of working a variety of jobs, provided he receives reasonable accommodations. For years, however, Defendants simply refused to give Wilfred any paying job at all – despite his repeated requests.

4.    And because Angola inmates are not allowed to be idle, Wilfred was threatened with punishment for not having a job and required to do unpaid, informal janitorial labor around his dormitory.

5.    At the same time they were denying Wilfred access to the paid work program because he was hard-of-hearing, Defendants also refused to let Wilfred use the special "teletypewriter" (TTY) phone because they said he wasn't hard-of-hearing *enough*.[1]

6.    The way Defendants have treated Wilfred violates federal anti-discrimination laws. Wilfred now seeks compensation for the discrimination and lack of

---

[1] A teletypewriter (TTY) is an device that allows the users to type messages back and forth instead of speaking. A TTY user can communicate with a person using a voice telephone via a relay service, which is a third party intermediary that relays the messages back and forth between the parties by typing and speaking.

accommodation he suffered.

7.      By and through this action, Wilfred seeks compensatory damages against the State of Louisiana, Department of Public Safety and Corrections. With regards to Wilfred's request for nominal damages, it is Wilfred's position that an award of nominal damages would confer significant civil rights to the public, as a judgment in his favor against the State of Louisiana, regardless of the amount, would deter the State from discriminating against disabled individuals in the future.

## II.      JURISDICTION AND VENUE

8.      Plaintiff's claim arises under federal civil rights law. This Court has jurisdiction over Plaintiff's claims of federal rights violations under Title II of the Americans with Disabilities Act and the Rehabilitation Act, which are enforceable in this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

9.      The venue is proper in the Middle District of Louisiana under 28 U.S.C. §1391(b)(2). A substantial part of the events giving rise to the claim occurred in West Feliciana Parish, situated in the Middle District of Louisiana.

## III.      THE PARTIES

*Plaintiff*

10.      Plaintiff **Wilfred Guy** (DOC # 111795) is a prisoner confined in the Louisiana State Penitentiary at Angola. He is of suitable age and capacity to file this suit. At all relevant time during this suit, Plaintiff was a resident of the Louisiana State Penitentiary in the Middle District of Louisiana. He is a person with a disability. *See* 42 U.S.C. § 12132. His disability prevents him from engaging in major life activities like using the phone, communicating verbally, and other daily activities. *See* 28 C.F.R. §

35.104(2).

*Defendants*

11.     Defendant **James LeBlanc** is the Secretary for the Louisiana Department of Public Safety & Corrections. He is sued in his official capacity.

12.     Defendant **The State of Louisiana, Department of Public Safety & Corrections** is a department of the State of Louisiana. It is a recipient of federal financial assistance as that term is used in the Rehabilitation Act.

## IV.     FACTS

**A.      Defendants Refused to Give Wilfred a Job Due to His Hearing Impairment, Excluded Him from Sports and Hobbycraft, and then Harassed Him When He Advocated for His Rights**

13.     Plaintiff realleges and incorporates each and every foregoing paragraph.

14.     Wilfred Guy has hearing damage in both ears that critically affect his ability to hear, although he is not completely deaf. He began wearing hearing aids at Angola in 1996.

15.     Wilfred's hearing disability affects his ability to communicate using a traditional telephone, but there is only one TTY phone at Angola.

16.     Wilfred should be allowed to use the TTY phone, because a sign posted on

the TTY room says:

**AUXILIARY AIDS**

**NOTIFICATION**

Sign language and interpreters,
TTY's, and other auxiliary aids and
services are available free of
charge to people who are deaf or
hearing impaired.

17.     But                  For assistance, please contact           Wilfred has *not*
                any department personnel or the
been allowed to use the    ADA Coordinator at 225-655-2031           TTY phone. A
                (voice/TTY).

memorandum dated March 4, 2010 was posted on the door of the TTY room, stating that

only four prisoners were allowed to use the TTY. The list did not include Wilfred.

18.     Defendants, however, were aware of Wilfred's disability. On September 6,

2012, a permanent duty status was issued for Wilfred, stating "Regular duty with

restrictions: out of field, no kitchen, no sports, no hobbycraft, no rodeo x permanent."

The reason: "Medical director review/hearing impaired." *See Fig. 1.*

**ISSUE DATE:** 09/06/2012          **MEMO TYPE DATE:** 9/06/2012
**PERMANENT DUTY STATUS:** REGULAR DUTY WITH RESTRICTIONS: OUT OF FIELD, NO KITCHEN,
               NO SPORTS, NO HOBBYCRAFT, NO RODEO X PERMANENT

**REASON:**     MEDICAL DIRECTOR REVIEW/HEARING IMPAIRED

**PER ORDERS OF:** DR. COLLINS,        MD  Perm Duty Status Code: RDWR
                    INPUT BY _____

**Fig. 1:** Wilfred is excluded from sports and hobbycraft because he is
"hearing impaired."

19.     Wilfred's 2012 duty status acknowledged his disability and excused him

from working in the field or kitchen. This left many work options open – dorm orderly, tier walker, office clerk, and other jobs which Wilfred is perfectly capable of performing – but Angola instead denied Wilfred any paid job at all.

20.     This directly contravenes Louisiana law, which requires that the "department shall provide employment opportunities and vocational training for all inmates, regardless of gender, consistent with available resources, physical custody, and appropriate classification criteria." LA R.S. 15:832(A).

21.     When Wilfred asked for a job, Warden Barrett Boeker told him, "If you can't hear, you don't need no job."

22.     However, Angola still forced Wilfred to do labor – just without pay. Wilfred had to stay at his dorm, where he was required to do janitorial work. As a result, he had no income despite still working.

23.     Wilfred has had to fight for every accommodation he has received. On September 19, 2014, Wilfred filed an Administrative Remedy Procedure when a security guard refused to bring him his hearing aid batteries.

24.     He also fought to use the correct phone. On September 29, 2014, Wilfred wrote a letter to then-Warden Burl Cain requesting to use the ADA telephone at the main prison because he is hearing impaired.

25.     Rather than accommodating Wilfred, Defendants retaliated against him for his self-advocacy. On December 3, 2014, Wilfred was placed in solitary confinement when security personnel falsified a disciplinary report to retaliate for Wilfred filing too many ARPs.

26.     In 2015, Defendants stopped took away Wilfred's internal hearing aid, and

instead provided Wilfred with a pocket-talker (which amplifies sound) and one year of batteries. The pocket-talker physically identifies Wilfred as disabled, and thus puts him at increased risk of harassment and assault.

27.     However, Wilfred was still not fully accommodated and could not participate in daily activities with only the pocket-talker. On May 31, 2015, he filed another ARP about Angola's denial of accommodations for his hearing impairment.

28.     Frustrated with Defendants' lack of response, Wilfred filed a complaint with the Department of Justice about his hearing disability, being unable to access the TTY phone, and other ADA issues on June 25, 2015.

29.     On July 1, 2015, Wilfred wrote to the DOJ again.

30.     On July 9, 2015, Wilfred received another duty status that referenced his hearing impairment, and continued to exclude him from sports and hobbycraft. This one also indicated he should be "away from machinery."

31.     On January 12, 2016, the Civil Rights Division of the U.S Department of Justice wrote a letter to the Department of Corrections. The DOJ wrote that:

> As you know, the Civil Rights Division of the United States Department of Justice (Department) has been investigating numerous complaints alleging that the Louisiana State Penitentiary, Angola, Louisiana (LSP-Angola), is in violation of Title II of the Americans With Disabilities Act of 1990. . . . **Our investigation substantiated the complainants' allegations that LSP-Angola is in violation of Title II of the ADA and Section 504 in some key areas.**

(Emphasis added.)

32.     The DOJ's expert found at least 188 violations of the ADA at Angola.

33.     The DOJ's investigation found that Angola was out of compliance with federal law specifically in regard to work for inmates with disabilities.

34.     Later in 2016, the DOJ contacted the Louisiana Department of Corrections on Wilfred's behalf. He was taken to Lafayette, where an audiologist confirmed his hearing impairment.

35.     On April 29, 2016, Wilfred was finally released from solitary confinement. He continues to suffer physical, emotional, and mental ramifications from spending years in solitary confinement.

36.     Wilfred continued to advocate for himself. On May 26, 2016, he wrote a letter to an attorney at the American Civil Liberties Union, describing Angola's denial of access to services based on his disability. He described how his hearing aid was broken, and how he would have to purchase another one himself.

37.     At this point, Wilfred was still being forced to work without pay in the dorms, and thus did not have any income to fund his own accommodation.

38.     On October 31, 2016, a Classification Department Hearing was conducted that approved his request for a job assignment. He was assigned to "L 20 LIMITED DUTY." But that did not actually result in him receiving a job.

39.     On March 28, 2017, after filing several ARPs and getting denied, Wilfred met with Rhonda Honeycutt in Classification to discuss some of his accommodation needs. He informed Ms. Honeycutt that the TTY phone was broken, but he needed to use it and had filed ARPs about it. She informed Wilfred she would check into it.

40.     The same day, the Classification Department wrote to Wilfred, stating that he would need to "get with MPO or MPO Lobby Security to use the TTY phone."

41.     After receiving this letter, Wilfred asked Correctional Officers on every shift to use the TTY phone, and all said it was broken. However, they also stated he

needed "paperwork" to use the phone, and would therefore be unable to use it even if it were functional.

42.     In addition to being denied a job and proper accommodations due to his hearing disability, Wilfred also endured a constant stream of harassment related to the discrimination.

43.     On May 2, 2017, Assistant Warden Jimmy Smith told Wilfred that he didn't want him on Smith's yard, and that Wilfred needed to get a job. Wilfred informed Assistant Warden Smith that he asked for a job, and can't get one.

44.     Assistant Warden Smith repeatedly told Wilfred that he couldn't be on the yard and that he would be locked up or sent to his cell if he doesn't have a job – on May 8, May 11, and May 15, 2017.  On the 15th, Assistant Warden Smith added, "You filed too many ARPs."

45.     On May 17, 2017, Wilfred's request to change his living quarters was approved. He requested to move to avoid the harassment from Assistant Warden Smith. Unfortunately, his former dorm had closed caption television (making television accessible to the hearing impaired), and his new dorm does not.

46.     Finally, after numerous ARPs and letters to Wardens as well as outside advocates, Wilfred was given a job in Angola's mattress factory on May 23, 2017.

47.     However, this job did not accommodate his hearing impairment. The job involves loud machines, and puts his safety in danger since he cannot adequately hear them.

48.     While Wilfred finally has a paying job, he remains without accommodation for his other needs – and thus has not ceased advocating for himself. For

its part, Angola staff have not ceased harassing him in retaliation. On August 17, 2017, Warden Benjamin said to Wilfred, "Look here Wilfred Guy let me tell you one mutha-fuckin thang, you file one more got damned A.R.P. or lawsuit I'm gonna lock your ass up, let another A.R.P. come across my desk."

49.    Five days later, Wilfred filed an ARP about Warden Benjamin's threat.

50.    Warden Benjamin then came to Wilfred asking if Wilfred had written his legal team about the threat, and Wilfred admitted he had. After that, Warden Benjamin told his officers not to lock up or harass Wilfred.

51.    On January 25, 2018, Wilfred was transferred to a job as Cypress Walk Orderly, sweeping and mopping the walk in front of his dorm. For the first time in many years, Wilfred has a job that is (1) paid and (2) appropriate to his disability.

**B.    Defendants Know Their Obligations Under the ADA and RA**

52.    Defendants know their responsibilities towards the deaf and hard of hearing. In 2008, the Louisiana Department of Corrections created a PowerPoint entitled "Communicating Effectively with Deaf or Hard-of-Hearing Offenders." Slide 14 acknowledged that the ADA requires "effective communication, auxiliary aids and services, [and] telecommunication devices." It also stated that TTY phones "will be located in visiting areas and housing units."

53.    Section VII of the DOC policy on Effective Communications with Inmates Deaf or Hard of Hearing says that the Department "shall promptly provide TTY units to all deaf and hard of hearing inmates residing in residential units" upon request.

54.    THE STATE OF LOUISIANA is painfully aware of its obligation to accommodate individuals who deaf. According to a document produced by the State of

Louisiana, entitled "ADA Deaf Offenders," this document states on page nine "Other circumstances in which auxiliary (i.e., supporting) aids and services for inmates might be appropriate include:

- Initial intake and classification processing

- Regularly scheduled health care appointments and programs such as medical, dental, visual, mental health, and drug and alcohol recovery services

- Emergency heath care where having an interpreter would not present an undue burden (e.g., interpreter can arrive at the scene quickly)

- Treatment and other formal programming

- Educational classes and activities"

55.     Further, page sixteen of the document entitled "ADA Deaf Offenders," states "Deaf inmates are entitled to sign language interpreters for religious activities, educational programs, medical consultations, parole hearings, disciplinary actions, counseling and other services through the ADA."

56.     Further page thirty-seven of the document states "Qualified sign language and oral interpreters

An employee who signs "pretty well" or has only a basic familiarity with sign language or finger spelling IS NOT a qualified sign language interpreter.

Likewise, someone who is experienced is sign language but who does not possess the ability to process spoken communication with the proper signs or to observe someone else signing and change their signed or finger spelling communication into spoken words is not a qualified sign language interpreter.

A Department employee should not be allowed to interpret if his or her presence poses a conflict of interest or raises confidentiality and privacy concerns.

On occasion, an inmate may possess the skill level necessary to provide interpreting services; however, the impartiality concerns remain, and in many, if not most, situations, inmate interpreters should not be used due to confidentiality, privacy and security reasons."

57.     According to the meta-data of this document, it was created on August 1, 2008 at 1:22 PM and was last saved on November 3, 2016, at 8:56 AM. According to the meta-data, this document is "Revision number 148."

58.     As the "ADA Deaf Offenders" document and accompanying meta-data make perfectly clear, the Louisiana Department of Public Safety and Corrections is perfectly aware of its obligation to accommodate persons who are deaf or hard of hearing.

59.     On December 11, 2017, the case of *Nelson Arce, et. al. v. Louisiana State, et. al.*, U.S.D.C. for the E.D. of Louisiana, Civil Action number 16-14003 went to trial. In that case, the deaf Plaintiff alleged that the State of Louisiana, Department of Public Safety and Corrections discriminated against him under Title II of the ADA and the RA by and through its failure to provide him with adequate auxiliary aids and services.

60.     Following a five-day trial, the Jury returned a verdict determining that the State of Louisiana discriminated against Nelson Arce in violation of Title II of the Americans with Disabilities Act.

61.      The Jury further held that the discrimination against Nelson Arce was intentional. Final judgment was entered in favor of the Plaintiff.

62.     On November 14, 2017, the United States of America and the State of Louisiana, Department of Public Safety and corrections entered into a settlement

agreement bearing the number DJ # 204-32M-55.

63.    Paragraph II(D) of the DOJ-LA agreement states "Based on this compliance review of LSP's programs, services, activities, and facilities, the United States has concluded that LSP contains architectural and programmatic barriers to access for persons with disabilities and that qualified individuals with disabilities are, by reason of such disabilities, excluded from participation in or are denied the benefits of many of LSP's programs, services, or activities or are subjected to discrimination in violation of Title II of the ADA. The programmatic barriers include: the failure to provide accessible transportation to transport inmates with disabilities to the medical infirmary and other areas, as needed; and limited access to jobs for inmates with mobility disabilities."

**C.    Wilfred Has Exhausted his Administrative Remedies**

64.    On March 8, 2017, Wilfred filed an ARP specifically regarding: the denial of a paid job due to his disability, and the lack of accommodations for his hearing disability.

65.    On July 14, 2017, DOC HQ issued a Step One response to Wilfred's ARP. It erroneously stated that Wilfred was being paid for his work as a dorm orderly. It also stated, without evidence, that a hearing aid was not medically necessary for Wilfred, the pocket-talker being sufficient. On July 25, 2017, Wilfred timely appealed that denial.

66.    On October 15, 2017, DOC HQ issued a Step Two Response to Wilfred's ARP. It stated that Assistant Warden Falgout reviewed Wilfred's medical records and found that Wilfred did not meet the qualifications to have access to the TTY phone. It did not further address the other concerns, stating Step One adequately addressed them.

67.    Wilfred thus has exhausted his administrative remedies seeking

accommodation. Accordingly, Wilfred now files this lawsuit to vindicate his rights.

## V.    CLAIMS FOR RELIEF

### Violation of the ADA and the Rehabilitation Act
### (All Defendants)

68.    Plaintiff realleges and incorporates each and every foregoing paragraph.

69.    Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

70.    Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.  The Rehabilitation Act extends relief to "any person aggrieved" by discrimination in violation thereof. 29 U.S.C. § 794a(a)(2).

71.    Federal regulations implementing Title II of the ADA further provide that a public entity "shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1). Federal regulations implementing Title II of the ADA further provide that a public entity "shall furnish appropriate auxiliary aids and services where necessary," and "in order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b).

72.    Title II of The Americans with Disabilities Act and Section 504 of the Rehabilitation Act require that public entities affirmatively ensure that disabled people have meaningful access to programs provided. Work in prison is a program, as demonstrated by its requirement under LA R.S. 15:832(A). Since prisoners are uniquely dependent on prisons for the services they provide – being unable to obtain, for example, employment elsewhere – prisons have a higher obligation to provide meaningful access to their disabled prisoners. *See Pierce v. District of Columbia*, 128 F.Supp.3d 250 (D.C. 2015).

73.    Implementing regulations to the ADA prohibit placing a surcharge on measures, such as auxiliary aids like hearing aids, required to provide nondiscriminatory treatment under the Act. 28 C.F.R. § 35.130(f).

74.    Title II of the ADA and the Rehabilitation Act apply to state prisons: "Modern prisons provide inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be 'excluded from participation in')." *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210, 118 S. Ct. 1952, 1955, 141 L. Ed. 2d 215 (1998). Prisoners may sue a state for monetary damages under the ADA, as Title II of the ADA abrogates state sovereign immunity. *United States v. Georgia,* 546 U.S. 151, 126 S.Ct. 877 (2006).

75.    At all times relevant to this action, Wilfred Guy has been substantially limited in the major life activities of hearing and communication, and is an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(2), and the Rehabilitation Act, 29 U.S.C. § 705(9). But even if he were not, he would still be

protected. The statutes also protect persons who are regarded by a public entity as having

a physical or mental impairment that substantially limits a major life activity, whether or

not that person actually has an impairment.

76.    Defendants receive federal funds.

77.    When Defendants refused to provide Wilfred access to the public program

of a paid job by reason of his disability, while simultaneously denying him the

accommodations of a hearing aid, access to a TTY phone, and other appropriate

accommodations, they violated Title II of the Americans with Disabilities Act and the

Rehabilitation Act.

78.    Defendants also use eligibility criteria that tend to screen out people with

disabilities.  28 C.F.R. § 35.130(b)(8). Specifically, according to LSP Directive #09.036,

an offender is excluded from using the hobbyshop when under medical care and/or

treatment requiring a duty status. It is also standard practice for "no sports" to be attached

to any duty status for medical care.

79.    Defendants failed to provide Plaintiff with meaningful access to the

services at issue in this case.

80.    Defendants failed to provide Plaintiff with program access to the services

at issue in this case.

81.    Defendants discriminated against Plaintiff with deliberate indifference to

his needs as an individual with a disability.

82.    Based on the facts alleged above, Defendants intentionally discriminated

against Plaintiff.

83.    Further, Defendants were purposeful in its choices, which is sufficient to

constitute intentional discrimination under the RA and ADA.

84.    In the alternative, Defendants is liable under the ADA and RA pursuant to the case of *Kelly v. Boeing Petroleum Servs., Inc.*, in which the Fifth Circuit held that the Supreme Court case of *Alexander* expressly rejected the notion that a plaintiff is required to show intentional discrimination to establish a prima facie case of disparate impact discrimination under the RA. 61 F.3d 350, 365 (5th Cir. 1995).

85.    The harm sustained by Plaintiff herein is the expected and foreseeable consequence of Defendants' failure to comply with the requirements and mandates of the ADA and RA. These statutes and accompanying regulations exist to ensure that those with communication limitations will have full use of places of public accommodations. When the State of Louisiana failed to adhere to its obligations under these regulations, it was imminently foreseeable that those with disabilities would sustain the exact harms alleged by Plaintiff in this lawsuit.

## VI.    RELIEF REQUESTED

86.    Wherefore Plaintiff requests judgment be entered against Defendants and that the Court grant the following:

a.    Declaratory relief;

b.    A permanent injunction requiring Defendants to comply with the requirements of the ADA/RA and to provide the appropriate opportunities, accommodations, and auxiliary aids and services..

c.    Judgment against Defendants for Plaintiff's asserted causes of action;

d.    Award nominal and compensatory damages against the State of Louisiana, Department of Public Safety and Corrections **that in no event shall exceed**

17

**twenty dollars. Plaintiff seeks no damages more than twenty dollars.**

e.   Award costs and attorney's fees pursuant to <u>42 U.S.C. § 1988</u>, <u>42 U.S.C. §</u>

<u>12205</u>, <u>28 C.F.R. § 35.175</u>, and <u>29 U.S.C. § 794a(b)</u>;

f.   An order retaining jurisdiction over this matter to ensure that the terms of

any injunction are fully implemented;

g.   Order such other and further relief, at law or in equity, to which Plaintiff

may be justly entitled.

Respectfully submitted, this the seventeenth day of October, 2019,

WILFRED GUY,
By and through his counsel,

/s/ *Marc Florman*
BIZER & DEREUS, LLC
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Marc Florman  (LA # 35128)
jhammack@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

/s/ *William Most*
Law Office of William Most, L.L.C.
Louisiana Bar No. 36914
201 St. Charles Ave., Ste. 114 #101
New Orleans, LA 70170
Tel: (650) 465-5023
Email: williammost@gmail.com